Bradbury, J.
In June, 1887, proceedings were instituted before the County Commissioners of Marion county, of this state, to create a taxing district, under the one mile assessment pike law, to raise funds to pay for improving the “ Caledonia Free Turnpike Road.” The plaintiff in error, as, also, did The Cleveland, Columbus, Cincinnati & Indianapolis Railway Company, as well as some other owners of property within the proposed district, protested and remonstrated against the proposed improvement. The district, however, was created, and the improvement ordered tó be made; whereupon the plaintiff in error brought its action to enjoin the collection of the tax, levied therefor, against the railroad under its control. By its petition it sought to attack, not only the regularity of the proceedings had before the county commissioners, but, also, the validity and constitutional operation of the law itself. The action was appealed to and tried in the circuit court, and the findings of fact made by that court upon the trial, eliminate all questions respecting the regularity of the proceedings had before the county commissioners, leaving for our consideration the questions only that relate to the construction and validity of the law. Counsel for plaintiff in error have criticised the law, (the one mile assessment pike act) with extreme severity, and demonstrate that in the case of the plaintiff in error, and others in like situation, it compels a heavy contribution to the costs of an improvement, from which they derive very little, if any, benefit. This, however, is not a test, fatal to the power of taxation; if the object is in its nature public, it is not necessary to the validity of a tax levied to accomplish it, that persons or property taxed therefor should be directly or pecuniarily benefited thereby. Cooley’s Constitutional Limitations, 587.
The power of the legislature to authorize the commissioners of a county to establish a taxing district like the one involved in this case, was sustained by this court in Bowles v. State, 37 Ohio St. 35, in which decision we fully concur. *251 The taxing district, being constitutionally and legally created in the exercise, of the general power of taxation, as distinguished from the power of local assessment, it follows that the tax is valid if the constitutional rule of equality has been observed in making the levy. This rule requires that the rate shall be uniform upon all property subject to taxation within the district.
That nearly six and six-tenths miles of the track of the roadway of the plaintiff in error is situated within the taxing district is shown by the finding of the circuit court. Upon this property it was subject to be taxed according to the general rules prescribed by statute for. the taxation of railroads in this state. Section 2774, Revised Statutes, prescribes that the value of the “ property, moneys and credits, of any railroad company, as found and determined by such board (of county auditors) shall be apportioned by said board among the several counties through which such road, or any part thereof, runs, so that to each county and to each city, village, township and district, or part thereof therein, shall be apportioned such part thereof as shall equalize the relative value of the real estate, structures, and stationary personal property of such company therein, in proportion to the whole value of the real estate, structures, and stationary personal property of such railroad company in this state; and so that the rolling stock, main track, road bed, supplies, moneys and credits of such company shall be apportioned in the same proportion that the length of such road in such county bears to the entire length thereof in all said counties or county, and to each city, village, and district, or any part thereof therein,” etc. This section provides that such proportion of the entire property of a railroad, (except realty not necessary to its daily running operations) shall be taxed in each district through which it runs, as the length of road in such district bears to its whole length.
The method of taxing railroad companies prescribed by section 2774, Revised Statutes, has been in use in this state for more than a quarter of a century, and its validity has not been seriously challenged before; nor do we understand *252 it to be questioned now in its usual and ordinary operation ; though counsel vigorously assail the alleged injustice of its operation in the case before us. If it is unjust in its operation, the remedy is with the legislature, for that body, while acting within the sphere of its authority to tax is the sole judge of the wisdom and justice of the measure it may adopt; exact justice in matters of taxation being practically unattainable in any event. Cooley’s Constitutional Limitations, 630, 631.
The constitutional operation of the one mile assessment pike law is assailed on a number of grounds, only two of which, however, it will be necessary to notice. They are, that the law provides no means by which a county auditor may ascertain the taxable personal property within the district generally; and, especially, that it provides no means by which that officer may ascertain the amount and value of the property under the control of the plaintiff subject to taxation therein. These two objections can be considered together.
It is true that the one mile assessment pike law contains no express provisions prescribing the steps to be taken by a county auditor to ascertain the amount and value of the personal property of the plaintiff in error, or even any other personal property, within the district that is subject to taxation therein. Section 4777, Revised Statutes, does, however, require a county auditor to enter the amount levied “ upon the duplicate for collection, on all the lands and taxable property within the bounds of the road, as laid out and established,” and it provides that there shall be transmitted to him a map and profile of the road as the same has been established by the road commissioners. The duties of the county auditor under this statute are plain. He is to place the tax against all the lands and personal property within the bounds of the road, and he has before him a map showing the boundaries thereof. No minute and specific statutory directions are necessary to enable one possessed of ordinary intelligence to discharge this duty, and, therefore, if among the multitude of provisions regulating the duties of county auditors *253 no express directions are to be found prescribing the precise manner in which this one is to be performed, he must adopt and pursue such means as are reasonably fit and appropriate to the matter in hand. He has in his office not only a map showing the boundaries of the taxing district, but records showing the valuation per mile placed upon the railroad by the proper board, and the amounts of personal property in each township and municipality returned for taxation and to whom it is to be taxed. With this information before him there would seem to be no practical difficulty in the way of obtaining such other information as might be necessary to enable him to enter the tax as required by the statute under consideration. The other objections made in argument to the constitutional operation of this law are not presented by the record in a manner calling for consideration at this time, and will not therefore be further noticed.
This disposes of all the questions raised by the record except that which relates to the obligation resting on the county commissioners to pay out of the county funds the cost of the material used in constructing the road.
The special findings of the circuit court show that the material used for covering the road was crushed limestone, the value of which in its several stages of preparation were as follows: In the earth before any labor was expended on it, $1,516.50, when earth had been stripped from it, $2,022.50, when quarried, $3,033, when delivered at the crusher, $3,527.50, and when crushed ready for hauling $5,055.
The plaintiff in error contends that by force of section 4800, Revised Statutes, this material should be bought by the county commissioners, and paid for out of funds belonging to the county at large, relieving, thereby, to that extent the taxing district. That statute reads as follows: “ Section 4800. The county commissioners shall build any or all of the bridges and culverts upon the roads provided for in this chapter, contract and pay for all material used in the construction or repair of such roads, and in case the county commissioners and any owner of any material cannot agree upon the amount to be paid therefor, then the county com *254 missioners shall have all the rights and powers of applying to the probate court of the county to appoint appraisers to assess the value of such material,” etc.
If this statute stood alone, the inference, that the cost of the material was to be paid out of the general funds of the county, would be forcible, though the words of the statute ' do not in direct terms so order; yet the statute is not inconsistent with the contention that its purpose was merely to clothe the county commissioners with the duty of making the purchase, or exercising the right of eminent domain as the case might be, on the ground that their wider experience, or other reasons, made it expedient to require them to do so. However this may be, or whatever difficulties might arise in construing this section if it stood alone, but little doubt remains when it is construed in connection with section 4912, Revised Statutes.
“ Section 4912. When county commissioners, in contracting for the construction of turnpike roads, under any law, find it necessary, by reason of the inconvenient location of gravel or stone for the construction or repair of such roads, to have the gravel or stone transported to convenient points by rail, they may make such contracts for transportation, at public sale, as will best subserve the public interest; the cost of such material, and the transportation of the same, shall be paid from the county treasury, by order of the commissioners, from any funds applicable to the construction of such roads.”
By this section (4912, Revised Statutes) the costs of the material, as well as the cost of its transportation, while made payable out of the county treasury, is to be paid from funds applicable to such roads. The direction that it shall be paid out of the county treasury has little or no significance, for the funds raised in the taxing district are within the county treasury as well as the general funds of the county. The important direction as respects the matter in hand is that which orders payment to be made out of “ any funds applicable to such roadsj ” for the only funds so applicable are *255 those raised by the tax levied on the property within the taxing district that was created for that very purpose.

Judgment affirmed.